## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

AARON LITTLE FRENCH,        *

Plaintiff                  *

v                       *        Civil Action No. CCB-15-3805

MARY JANE ROSE, *et al.*,      *

Defendants             *
                         ***

## MEMORANDUM

Pending is a motion to dismiss, or alternatively, for summary judgment filed by defendants Mary Jane Rose, Frank Bishop and Randy Watson. (Defs.' Mot. to Dismiss, ECF No. 8).[1]  Plaintiff was informed by the court, pursuant to *Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir. 1975), that failure to file a response in opposition to the motion filed by defendants could result in dismissal of the complaint. (Rule 12-56 Ltr., ECF No. 9).[2]  Plaintiff has failed to file anything further.  Upon review of the pleadings filed, the court finds a hearing in this matter unnecessary. *See* Local Rule 105.6 (D. Md. 2016). For the reasons stated below, defendants' dispositive motion will be GRANTED.

### I. Complaint Allegations

Plaintiff Aaron Little French, an inmate currently confined at the North Branch Correctional Institution in Cumberland, Maryland, filed his complaint naming as defendants Mary Jane Rose, Warden Frank Bishop, Commissioner of Corrections Randy Watson, and Inmate Grievance Office Director Scott Oakley. (Compl. at 2, ECF No. 1). Plaintiff alleged that

---

[1]       Counsel has not accepted service on behalf of Scott Oakley.  Plaintiff's complaint against Scott Oakley, in his individual capacity shall be dismissed without prejudice.  *Moore v. Bennette*, 517 F. 3d 717, 725 (4th Cir. 2008).

[2]       Citations are to the court's electronic docket.

defendants were deducting federal court filing fees out of his inmate trust account without abiding by the Prison Litigation Reform Act (PLRA) formula. (*Id.* at 3).  Plaintiff states that he is indigent. (*Id.*). He alleges that Mary Jane Rose "refuses to apply the formula computation of using the previous months balance to determine how much [he] owes in the instant month." (*Id.*). Plaintiff states that money was withdrawn from his account on October 31, 2014, December 29, 2014, March 6, May 28, July 16, July 20, July 30, September 23, October 28, November 6, November 10, and November 17, 2015. (*Id.*). Plaintiff states that none of the deductions took into account his previous month's balances or extended to him the indigency protection of the PLRA formula. (*Id.*). Additionally, plaintiff states that Mary Jane Rose withdrew $192.00 from his account for federal filing fees which he claims he did not owe. (*Id.*).

Plaintiff claims that the other named defendants received several administrative remedy procedure (ARP) complaints regarding Rose's processing of plaintiff's funds but have failed to address same. (*Id.* at 4).  He indicates that his attempts to pursue this claim in the Maryland state courts have been unsuccessful. (*Id.*).

## II. Defendants' Response

Defendants explain that an inmate's account is commonly referred to as the Maryland Offender Banking System (MOBS) account and consists of two parts: a "Reserve Balance" which maintains a maximum balance of $50.00 and is reserved for an inmate's release from prison; and the "Spending Balance" which refers to money which the inmate can spend in prison. (Defs.' Mot. to Dismiss at 2; Decl. of Cheryl Lindner at ¶ 3, ECF No. 8-2). It is plaintiff's Spending Balance which is at issue in this case, as the Reserve Balance remains untouched. (Decl. of Cheryl Lindner at ¶ 3).

On August 1, 2014, the Department of Public Safety and Correctional Services ("DPSCS") North Region changed its accounting system. (*Id.* at ¶ 4). As a result of the change, DPSCS modified the manner in which it collects fees owed to the District Court of Maryland. (*Id.*). The fee collection is now automated by a computer system. (*Id.* at ¶ 5). When an inmate who owes an outstanding filing fee has money deposited into his account, 20% of the money is withheld, provided that after withholding the 20% the inmate has a balance of at least $10.00. (*Id.*). The money is held for a month before being remitted to the court. (*Id.*).

Under the old accounting system, money was not deducted as it was deposited into the account. Rather, the money was deducted the following month.  (*Id.* at ¶ 6).  Inmates, aware that a deduction was imminent to pay outstanding filing fees, spent the money before the money could be deducted. (*Id.*). The new accounting system allows for efficient collection of funds and "prevents inmates from evading their financial obligation to the court system." (*Id.*).

On August 1, 2014, plaintiff had a balance of $0.54 in his account. (*Id.* at ¶ 9, Resident Funds Inquiry at 9).  On August 7, 2014, plaintiff owed $2,463.71 in federal filing fees and $1.50 in copy fees. (*Id.*). Plaintiff received $35.00 on October 31, 2014, bringing his account balance to $35.11. (*Id.* at ¶ 10, Resident Funds Inquiry at 9).  Seven dollars, 20% of the deposit, was withheld from his account to pay for filing fees. (*Id.*). On that date, plaintiff's total debt was $2, 465.21. (*Id.*).

Plaintiff received $25.00 on December 29, 2014, resulting in an account balance of $25.16. (*Id.* at ¶ 11, Resident Funds Inquiry at 9).  Five Dollars, 20% of the deposit, was withheld from his account to pay for filing fees. (*Id.*). At that time plaintiff's debt was $2,456.71. (*Id.*).

3

On March 6, 2015, plaintiff received $25.00, which made his account balance $25.00. (*Id.* at ¶ 12, Resident Funds Inquiry at 9). Twenty percent, $5.00, was withheld to pay filing fees. (*Id.*). His total outstanding filing fee debt was $2,451.71. (*Id.*).

Plaintiff received $40.00 on May 28, 2015, resulting in a balance to be $40.01. (*Id.* at ¶ 13, Resident Funds Inquiry at 8).   Again 20% was withheld, or $8.00. (*Id.*). The money was put toward filing fees of which plaintiff owed $2,446.71. (*Id.*).

Plaintiff received funds on July 16, 2015, July 20, 2015, July 30, 2015, September 23, 2015, October 28, 2015, November 6, 2015, November 10, 2015, and November 17, 2015. (*Id.* at ¶¶ 14–21, Resident Funds Inquiry at 7–8). On each occasion the deposit to plaintiff's account caused his balance to exceed $10.00. (*Id.*). As such, twenty percent of the amount received was withheld to pay for outstanding federal filing fees.  At all times, plaintiff owed a total debt in excess of $2,000.00. (*Id.*).

Under the old system, on November 30, 2012, when plaintiff owed $2,215.00 in federal filing fees, (*id.* at ¶ 23, Inmate Banking System History Detail Report at 12–13), funds in the amount of $190.65 were taken from his account on that date to pay federal filing fees. (*Id.* at ¶ 23 Inmate Banking System History Detail Report at 13).  The total amount of plaintiff's income for October 2012 had been $1,074.50. (*Id.*). At that time the old accounting system was in effect, which automatically deducted 20% of the preceding month's income, if the balance in the account was over $10.00. (*Id.*). As the balance in plaintiff's account on November 30, 2012 was $200.65, only $190.65 could be deducted as payment of filing fees, leaving plaintiff with $10.00 in his account. (*Id.*).

Cheryl Linder, Fiscal Accounts Clerk Manger with DPSCS's North Region avers that Mary Jane Rose was not involved with making any decision to withdraw or withhold money from plaintiff's account on any of the occasions noted in the complaint. (*Id*. at ¶ 24). Rose does not have access to plaintiff's account, including his balance, and has never had access to same. (*Id*.).

On December 10, 2012, plaintiff filed an ARP concerning the November 30, 2012, deduction of funds from his account. (ARP NBCI-3257-12 at 2, ECF No. 8-4). Plaintiff was instructed to resubmit the ARP with additional information but failed to do so. (*Id*.). Plaintiff did not appeal to the Commissioner of Correction. (Decl. of Kristina Donnelly at ¶ 2; ECF No. 8-5). Plaintiff did file an appeal to the Inmate Grievance Office which was dismissed as plaintiff had failed to properly exhaust the ARP process below. (Decl. of Robin Woolford at ¶ 3(a); ECF No. 8-6).

On November 25, 2014, plaintiff filed an ARP concerning the October 31, 2014 withdrawal. (ARP NBCI 3126-14 at 4). The ARP was dismissed as meritless. Plaintiff appealed .to the Commissioner of Corrections, who dismissed the ARP. (*Id*. at 9–10). The IGO also dismissed the ARP as without merit. (Decl. of Robin Wooldford at ¶ 3(c)).

Plaintiff filed an ARP on June 24, 2015, concerning the May 27, 2015 withdrawal. (ARP NBCI 1231-15 at 13). The ARP was dismissed as lacking in merit. (Decl. of Robin Woolford at ¶ 3(c)). Plaintiff did not appeal to the Commissioner of Corrections or to the IGO. (Decl. of Kristina Donnelly at ¶ 2; Decl. of Robin Woolford at ¶ 3).

### III. Standard of Review

### A.      Motion to Dismiss

The purpose of a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is to test the sufficiency of the plaintiff's complaint. *See Edwards v. City of Goldsboro,* 178 F.3d 231, 243 (4th Cir. 1999). The dismissal for failure to state a claim upon which relief may be granted does not require defendant to establish Abeyond doubt@ that plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 561 (2007). Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint. *Id.* at 563. The court need not, however, accept unsupported legal allegations, *see Revene v. Charles Cty. Comm'rs,* 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *see Papasan v. Allain,* 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *see United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

## B.    Motion for Summary Judgment

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247–48 (1986) (emphasis in original).

The party opposing a properly supported motion for summary judgment "'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts

showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)).

In *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986) the Supreme Court explained that in considering a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248. Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id*. at 252.

The moving party bears the burden of showing that there is no genuine issue as to any material fact. No genuine issue of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Therefore, on those issues on which the nonmoving party has the burden of proof, it is his or her responsibility

to confront the summary judgment motion with an affidavit or other similar evidence showing that there is a genuine issue for trial.

## IV. Analysis

### A.    Failure to Exhaust Administrative Remedies

Inmates are required to exhaust "such administrative remedies as are available" before filing an action. 42 U.S.C. § 1997e(a); *see Ross v. Blake*, 136 S.Ct. 1850, 1858 (2016) ("An inmate . . . must exhaust available remedies, but need not exhaust unavailable ones.").  This requirement is one of "proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). "[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette,* 517 F.3d 717, 725 (4th Cir. 2008).

Exhaustion is mandatory.  *Ross*, 136 S.Ct. at 1857, *Jones v. Bock,* 549 U.S. 199, 219 (2007).  A court may not excuse a failure to exhaust. *Ross*, 136 S. Ct. at 1856, citing *Miller v. French*, 530 U.S. 327, 337 (2000) (explaining "[t]he mandatory 'shall' . . . normally creates an obligation impervious to judicial discretion").  The purpose of exhaustion is to: 1) "allow[] a prison to address complaints about the program it administers before being subjected to suit"; 2) "reduce[] litigation to the extent complaints are satisfactorily resolved"; and 3) prepare a "useful record" in the event of litigation.  *Jones,* 549 U.S. at 219.  An inmate's failure to exhaust administrative remedies is an affirmative defense; defendant bears the burden of proving that he had remedies available to him of which he failed to take advantage. *Jones,* 549 U.S. at 211–12, 216; *Moore*, 517 F.3d at 725**.**

8

In *Ross*, the Supreme Court identified three kinds of circumstances in which an administrative remedy is unavailable. 136 S. Ct. at 1859. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* at 1859.  Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id.*  The third circumstance arises when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1860.

In Maryland, filing a request for administrative remedy ("ARP") with the warden of the prison is the first of three steps in the ARP process.  *See* Code of Md Regs. ("COMAR"), tit. 12 §07.01.04.  The ARP request must be filed within 30 days of the date on which the incident occurred, or within 30 days of the date the inmate first gained knowledge of the incident or injury giving rise to the complaint, whichever is later. COMAR, tit. 12 §07.01.05A.  If the request is denied, a prisoner has 30 calendar days to file an appeal with the Commissioner of Correction. COMAR, tit. 12 §07.01.05C.  If the appeal is denied, the prisoner has 30 days to file a grievance with the Inmate Grievance Office ("IGO").  *See* Md. Corr. Servs., Code Ann. §§10-206, 10-210; COMAR, tit. 12 §§ 07.01.03, 07.01.05B.

Complaints are reviewed preliminarily by the IGO.  *See* Md. Corr. Servs., Code Ann. §10-207; COMAR, tit. 12 §07.01.06A.  If a complaint is determined to be "wholly lacking in merit on its face," the IGO may dismiss it without a hearing. Md. Corr. Servs., Code Ann. §10-207(b)(1); COMAR, tit. 12 §07.01.07B.  The order of dismissal constitutes the final decision of

the Secretary of the Department of Public Safety and Correctional Services (DCPCS) for purposes of judicial review. Md. Corr. Servs., Code Ann.. §10-207(b)(2)(ii).  However, if a hearing is deemed necessary by the IGO, the hearing is conducted by an administrative law judge with the Maryland Office of Administrative Hearings. *See* Md. Cts. & Jud. Proc., Code Ann.. §10-208(c); COMAR tit. 12 §07.01.07-.08.  The conduct of such hearings is governed by statute. *See* Md. Corr. Servs., Code Ann.. § 10-208.

A decision of the administrative law judge denying all relief to the inmate is considered a final agency determination.  However, a decision concluding that the inmate's complaint is wholly or partly meritorious constitutes a recommendation to the Secretary of DPSCS, who must make a final agency determination within 15 days after receipt of the proposed decision of the administrative law judge. *See* Md. Corr. Servs., Code Ann. §10-209(b)-(c).

The final agency determination is subject to judicial review in Maryland state court, so long as the claimant has exhausted his/her remedies. *See* Md. Corr. Servs., Code Ann. §10-210. An inmate need not seek judicial review in state court in order to satisfy the PLRA's administrative exhaustion requirement. *See, e.g.*, *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) ("[A] prisoner who uses all administrative options that the state offers need not also pursue judicial review in state court.").

It is undisputed that plaintiff instituted the grievance process only as to the withdrawals made on November 30, 2012, October 31, 2014, and May 27, 2015.  The only ARP plaintiff properly exhausted was in regard to the October 31, 2014, withdrawal.

As to the November 30, 2012, withdrawal, plaintiff failed to complete the ARP process. He was directed to resubmit the ARP with additional information but failed to do so. Nor did

plaintiff appeal to the Commissioner of Corrections as required. Rather, he appealed to the IGO, which dismissed plaintiff's claim due to his failure to properly proceed through the ARP process. As such, plaintiff's claim regarding the November 30, 2012, withdrawal is unexhausted.

Plaintiff's ARP regarding the May 27, 2015, withdrawal was dismissed as meritless. He failed to note an appeal to either the Commissioner of Corrections or to the IGO. As such, this claim is also unexhausted.

Plaintiff failed to institute the ARP process, much less complete same, as to all other withdrawals from his account. As such, those claims are also unexhausted and subject to dismissal.

### B.      Mary Jane Rose

Liability under §1983 attaches only upon personal participation by a defendant in the constitutional violation. *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001). Mary Jane Rose took no action in regard to plaintiff's account. The withdrawing of fees from plaintiff's account was automatic. Rose is entitled to summary judgment.

### C.      Supervisory Liability

It is well established that the doctrine of respondeat superior does not apply in § 1983 claims. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (no *respondeat superior* liability under § 1983); *see also Trulock*, 275 F.3d at 402 (no *respondeat superior* liability in a *Bivens* suit). Liability of supervisory officials "is not based on ordinary principles of *respondeat superior*, but rather is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir.

2001) (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)).  Plaintiff has failed to point

to any personal conduct by Warden Bishop, Commissioner Watson, or former IGO Director

Oakley in regard to his inmate account.  Plaintiff's effort to hold these defendants liable based on

their supervisory roles is unavailing.[3] They are entitled to dismissal.

### D.    Filing Fee Collection

The PLRA placed several limitations on prisoner suits in federal courts.  One of the

constraints imposed is that prisoners who qualify to proceed *in forma pauperis* nevertheless must

pay the full filing fee.  After an initial partial filing fee is assessed, prisoners must pay, in

monthly installments, "20 percent of the preceding month's income credited to the prisoner's

account." 28 U.S.C. 1915(b)(2). No monthly installments are required when the prisoner's

account has less than $10.00. *Id.*  For prisoners like plaintiff who have filed several federal civil

claims *in forma pauperis*, the Supreme Court has recently clarified that the monthly installments

required under 28 U.S.C. 1915(b)(2) are to be assessed on a per case basis, simultaneously,

rather than sequentially. *Bruce v. Samuels*, 577 U.S., 136 S.Ct. 627, 632 (2016).  Plaintiff's

inmate account has been handled properly in light of the requirements of the PLRA.  Twenty

percent of the preceding month's income credited to plaintiff's account was withheld and

remitted to pay plaintiff's outstanding filing fee debt.  At no time did the withdrawing of funds

cause his account balance to fall below $10.00.

Even if defendants had somehow erred in the handling of plaintiff's account, his claim

here would nevertheless be unavailing.  Plaintiff's claim at base is one of lost or stolen property.

---

[3] To the extent plaintiff seeks to hold these defendants liable in regard to their handling of his ARPs, his claim fails. Prisoners have no constitutional right to the establishment of, or participation in, an administrative remedy or grievance process. *See Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). As such, any alleged deficiency in handling plaintiff's complaints, without more, fails to state a claim.

In such cases, sufficient due process is afforded to a prisoner if he has access to an adequate post-deprivation remedy.  *See Parratt v. Taylor*, 451 U. S. 527, 540 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986).  The right to seek damages and injunctive relief in Maryland courts constitutes an adequate post deprivation remedy.[4]  *See Juncker v. Tinney*, 549 F. Supp. 574, 579 (D. Md. 1982).[5]  The Supreme Court extended its *Parratt* holding to intentional deprivations of property.  *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984).  Therefore, even if plaintiff's funds were improperly withdrawn, such a claim does not rise to a constitutional violation.[6]

## V. Conclusion

For the aforementioned reasons, defendants' motion to dismiss, or in the alternative motion for summary judgment, construed as a motion for summary judgment, shall be granted. A separate order follows.

  2/24/17
Date

_____
Catherine C. Blake
United States District Judge

---

[4]  Plaintiff may avail himself of remedies under the Maryland Tort Claims Act and through the Inmate Grievance Office.

[5]  Although *Juncker* dealt with personal injury rather than property loss, its analysis and conclusion that sufficient due process is afforded through post deprivation remedies available in the Maryland courts also applies to cases of lost or stolen property, given *Juncker*'s reliance on *Parratt* in dismissing plaintiff's due process claim.

[6] Having found no constitutional violation, the court need not address defendants' claims that they are entitled to qualified immunity.